UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JAMES BAKER,


                          Plaintiff,

          -against-                                    **Case No.: 1:17-cv-05783**

CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT; JANE AND JOHN DOE
MEMBERS OF THE NEW YORK CITY POLICE
DEPARTMENT ##1-5;
BARNES & NOBLE BOOKSELLERS, INC.; and
JANE AND JOHN DOE EMPLOYEES OF
BARNES & NOBLE BOOKSELLERS, INC.
##6-10                                                 **COMPLAINT**
                                                       **AND JURY DEMAND**
                          Defendants.
--------------------------------------------------------------------x

     Plaintiff, by his attorneys, The Kurland Group, 160 Broadway, East Building, 11th Floor

New York, NY 10038, complaining of the Defendants, allege:

## NATURE OF ACTION

     1.    Plaintiff James Baker (hereinafter "Plaintiff" or "Baker") brings this action

against Defendants City of New York (hereinafter "City"); The New York City Police Department

(hereinafter "NYPD"), Jane and John Doe Members of the New York City Police Department ##1-

5 (hereinafter "Defendant Officers"), Barnes & Noble Booksellers, Inc. (hereinafter "Barnes &

Noble"), and Jane and John Doe Employees of Barnes & Noble Booksellers, Inc., ##6-10

(hereinafter "Defendant Employees" and collectively "Defendants") to secure injunctive and

monetary relief from wrongful detention, false imprisonment, negligence, discrimination because

of disability and sexual orientation in public accommodations, and other violations of Plaintiff's

constitutional and statutory rights.

     2.    Plaintiff alleges that Defendants subjected Plaintiff to wrongful detention and

false imprisonment in violation of Plaintiff's rights secured under the New York State and United States Constitutions, as well as subjecting Plaintiff to discrimination in a place of public accommodation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*, the New York State Human Rights Law (hereinafter "NYS HRL"), New York Executive Law §§290, *et seq.*, the New York City Human Rights Law (hereinafter "NYC HRL"), Administrative Code of the City of New York §§8-101, *et seq.*

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12101.

4.      This Court may exercise supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)(2), as Defendants reside in this district and the events giving rise to Plaintiffs' claims occurred in this district.

## JURY DEMAND

6.      **PLAINTIFF** demands a trial by jury in this action on each and every one of his claims.

## NOTICE OF CLAIM

7.      **PLAINTIFF** filed a Notice of Claim on or around August 9, 2016, within ninety days after his claim arose upon Defendant City of New York by delivering copies of the notice to the person designated by law as a person to whom such claims may be served. See Notice

of Claim, attached hereto as **Exhibit A**.

8.      The Notice of Claim was in writing, sworn to by Plaintiff and contained the name and addresses of the Plaintiff.

9.      The Notice of Claim set out the nature of the claim, the time when and the place where and the manner by which the claim arose, and the damages and injuries claimed to have been sustained by Plaintiff.

10.     Following a 50-H Hearing, the City of New York has neglected and failed to adjust the claims against it within the statutory time period. See Transcript of 50-H Hearing, attached hereto as **Exhibit B**.

## ADMINISTRATIVE PROCEEEDINGS

11.     On or around February 7, 2017, **PLAINTIFF** filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, and related claims. See EEOC Charge, attached hereto as **Exhibit C**. Thereafter, on or around March 24, 2017, **PLAINTIFF** received Notices of Right to Sue from the EEOC as to the **DEFENDANTS**, attached hereto as **Exhibit D**.

12.     Following the commencement of this action, a copy of this Complaint will be served on both the New York State Division of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

13.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

14.     **PLAINTIFF JAMES BAKER** is a sixty-five year old openly gay man living with HIV. Plaintiff, at all relevant times, was a patron of Defendant Barnes & Noble Booksellers, Inc.

15.     **PLAINTIFF** is a resident of the State of New York, County of Kings.

16.     **DEFENDANT CITY OF NEW YORK** (hereinafter "City") is a municipality duly incorporated under the laws of the State of New York and maintains its principle place of business at One Police Plaza, New York, New York 10007.

17.     **DEFENDANT NEW YORK CITY POLICE DEPARTMENT** (hereinafter "NYPD") is an agency of the City of New York.  NYPD maintains its principle place of business at 1 Centre Street, New York, New York 10007.

18.     **DEFENDANTS JANE AND JOHN DOE MEMBERS OF NEW YORK CITY POLICE DEPARTMENT ##1-5,** upon information and belief, are NYPD Officers participating in the NYPD's Paid Detail Program, who participated in the mistreatment and unlawful detention Plaintiff suffered. As NYPD Officers on Paid Detail assignment, **DEFENDANTS JANE AND JOHN DOE MEMBERS OF NYPD ##1-5** were at all relevant times working under the joint control and supervision of Defendant City of New York and Defendant Barnes & Noble.

19. .   **DEFENDANT BARNES & NOBLE BOOKSELLERS INC.** (hereinafter "Barnes & Noble") is a corporation duly incorporated under the laws of New York State and maintains its principle place of business at 122 5th Ave. New York, NY 10011.

20.     **DEFENDANTS JANE AND JOHN DOE EMPLOYEES OF BARNES & NOBLE BOOKSELLERS, INC., ##6-10,** upon information and belief, are employees of

Defendant Barnes & Noble who participated in the mistreatment and unlawful detention Plaintiff suffered.

## PROCEDURAL BACKGROUND

21.        Plaintiff initiated the instant action on June 6, 2017, by filing a Summons with Notice in New York County Supreme Court at Index No. 155165/2017. See Summons with Notice attached hereto as **Exhibit E.**

22.        Thereafter, Plaintiff served his Summons with Notice on Defendants City of New York, New York City Police Department, and Barnes & Noble, Inc. See Affidavits of Service attached hereto as **Exhibit F.**

23.        Defendants City of New York, New York City Police Department, and Barnes & Noble, Inc. thereafter appeared in the instant matter by noticing their respective appearances and demanding that Plaintiff serve his instant Complaint.

24.        Thereafter, on July 31, 2017, Defendant Barnes & Noble, Inc. removed the instant action to this Court by filing its Notice of Removal, attached hereto as **Exhibit G.**

## STATEMENT OF FACTS

25.        Plaintiff James Baker is a sixty-five year old openly gay man.

26.        Mr. Baker is also living with HIV and suffers from AIDS Dementia Complex, which is a manifestation of HIV/AIDS.

27.        Another common side effect of Plaintiff's treatment and AIDS Dementia is incontinence.

28.        Mr. Baker regularly attends a weekly meeting in Manhattan; Mr. Baker's meeting is located near one of Defendant Barnes & Noble's store location at 33 East 17th St., New York, NY. As such, Mr. Baker frequently shops at that Barnes & Noble location before his weekly

meetings.

29.     On or around June 22, 2016, Mr. Baker went to that Barnes & Noble location before his weekly meeting, as he has routinely done as a longtime patron.

30.     While at Barnes & Noble on June 22, 2016, Mr. Baker went to the store restroom to change his dressings about a bout of incontinence, a routine and incidental consequence of Mr. Baker's medical conditions.

31.     Mr. Baker went to the restroom without incident; he had not had any contact with any Barnes & Noble employee or any other patron. Mr. Baker had simply been browsing and proceeded to enter the restroom.

32.     Mr. Baker entered the men's restroom and went into a stall to attend to his personal needs. This restroom had two individual stalls. Mr. Baker entered the men's restroom and went into an unoccupied stall; the second stall remained occupied for approximately five (5) minutes. After the second stall became unoccupied, upon information and belief, Mr. Baker was by himself in the bathroom with his stall door locked for approximately ten (10) minutes when he heard a very loud bang on the stall door. Indeed, this bang was so forceful that it caused Mr. Baker to fear that someone was attempting to break the stall door.

33.     In actuality, upon information and belief, the loud bang was caused by Defendants John Doe Members of NYPD ##1-2 (hereinafter "Officers ##1-2"), two uniformed and armed NYPD officers who, upon information and belief, were members of Defendant City of New York's NYPD Paid Detail Program working under the joint control of Defendants City of New York, NYPD, and Barnes & Noble.

34.     This loud bang was the first interaction Mr. Baker had with anyone at Barnes & Noble on June 22, 2016, the day in question. Officers ##1-2 had not announced their presence,

had not knocked or otherwise announced themselves prior to their banging on the stall door, and had not otherwise interfered with Mr. Baker's use of the restroom or presence in Barnes & Noble until the instant interaction.

35.    Following this initial loud bang on the stall door, Officers ##1-2 still failed to identify themselves. In the absence of such identification, Mr. Baker assumed it was another Barnes & Noble patron attempting to use the restroom. Mr. Baker responded by saying that the stall was occupied.

36.    Thereafter, and still in the absence of any identification of themselves, Officers ##1-2told Plaintiff that the store manager, Defendant Jane or John Doe Employee of Barnes & Noble #6, was directing Mr. Baker to leave the store.

37.    Upon information and belief, Defendant Barnes & Noble and Defendant Employees directed Officers ##1-2 to remove Mr. Baker from Barnes & Noble without justification and motivated by Mr. Baker's use of store facilities to care for conditions related to his disability.

38.    After Plaintiff was notified that Defendants were attempting to remove him from the store, Mr. Baker was extremely startled and distressed. Mr. Baker's reasonable fear and feelings of intimidation and humiliation were caused in part by Mr. Baker's lack of knowledge of how Defendants even knew Mr. Baker was using the restroom in the first place. Mr. Baker was caused further emotional pain by being singled out and told to leave the store simply for using the restroom.

39.    Mr. Baker remained in the stall attempting to complete his personal needs and regain his composure from this upsetting interaction with Officers ##1-2 when the voices on the other side of the stall door continued to harass Mr. Baker.

40.     At this time, Mr. Baker had not yet seen Officers ##1-2 and remained unaware that these individuals were NYPD Officers.

41.     Officers ##1-2 proceeded to ask Mr. Baker why he was "naked in the stall," and demanded that he leave the stall immediately.

42.     Plaintiff has no knowledge at this time, and Defendants have failed to provide a reason why they believed Mr. Baker was "naked in the stall," a false allegation.

43.     Mr. Baker told Officers ##1-2 that he would leave when he was finished using the facilities.

44.     It was only at this time that Officers ##1-2 identified themselves as NYPD Officers. Mr. Baker was reasonably fearful, not only at the apprehension caused by being confronted by two armed and uniformed NYPD Officers, but also because Mr. Baker was still unable to see these individuals and could not confirm their identity.

45.     Mr. Baker asked what Officers ##1-2 would do if Mr. Baker was unable to leave the stall quickly enough to satisfy Defendant Officers' demands. Officers ##1-2 responded with threats to forcibly transport Plaintiff to the hospital against his will and without justification if Mr. Baker did not comply with their baseless requests.

46.     Upon information and belief, Officers ##1-2 remained in the bathroom while Plaintiff attempted to finish his personal hygiene needs, further intimidating Plaintiff and causing reasonable fear.

47.     Plaintiff exited the bathroom stall at approximately 5:30pm. Upon his exit, he saw Officers ##1-2 waiting inside the restroom. Mr. Baker, upon seeing two uniformed and armed police officers waiting for him, was made to feel further distress and fear. Mr. Baker was also humiliated and confused, as Plaintiff frequently shops at Barnes & Noble's place of business and

had never before had any incident.

48.      Plaintiff was further distressed that Defendants were taking these unlawful and discriminatory actions for no other reason than Plaintiff's need to use the restroom due to his health conditions.

49.      Plaintiff immediately informed Officers ##1-2 that he was not naked in the stall, but that his incontinence had required him to remove several articles of clothing to be able to attend to his personal hygiene properly. This exchange caused Plaintiff further humiliation, emotional distress, and invasion of privacy, as he was forced to attempt to explain his personal and medical needs to Officers ##1-2.

50.      Officers ##1-2 then told Plaintiff that they were going to "escort" him out of the store. Officers ##1-2 did not give a reason as to why Plaintiff was being "escorted" out, nor did they give a basis for their alleged authority to remove Plaintiff.

51.      Plaintiff asked Officers ##1-2 for their justification for attempting to remove him. Officers ##1-2 responded that the manager of Defendant Barnes & Noble, Defendant Barnes & Noble Employee #6, wanted Plaintiff to leave.

52.      Mr. Baker advised Officers ##1-2 that he was a patron and was not done with his shopping, and attempted to return to the fourth floor reading area to finish his browsing and shopping.

53.      Officers ##1-2 thereafter followed Plaintiff to the fourth floor, forcibly grabbed Plaintiff and handcuffed him. Officers ##1-2 further refused to tell Plaintiff why he was being detained and refused Plaintiff's request to use the telephone to call his lawyer.

54.      Plaintiff again requested that Officers ##1-2 tell Plaintiff the reason for his detention. Defendant Officers advised that Mr. Baker was not under arrest, but that he was being

"remov[ed] from the store by force."

55.        Thereafter, Officers ##1-2 forcibly took Plaintiff, still handcuffed, to the first floor back room. Mr. Baker was confined in this room against his will and remained handcuffed with two armed and uniformed NYPD Officers guarding him and preventing him from leaving.

56.        While confined and handcuffed without justification and without consent, Defendant Employees ##6-7 (hereinafter "Employees ##6-7") entered the room.

57.        At this time, Plaintiff remained handcuffed and confined against his will, and was now being questioned by Officers ##1-2 and Employees ##6-7. Employees ##6-7 also asked Plaintiff why he was "naked in the stall."

58.        Mr. Baker was confused by this question not only because it was a false allegation and Plaintiff was not naked in the stall, a fact Mr. Baker had already told Officers ##1-2, but also because Mr. Baker was alone in the stall and in the bathroom before Officers ##1-2entered and began to harass Plaintiff.

59.        Plaintiff never received an explanation from any Defendant as to why the managers believed he was naked, nor as to the basis for Plaintiff's detention.

60.        Defendant Employee #6, who upon information and belief is a store manager, told Mr. Baker that Barnes & Noble was going to issue Plaintiff a trespass notice solely based on Plaintiff's objection to Officers ##1-2's forcible detention and attempts to forcibly remove Mr. Baker.

61.        Defendant Barnes & Noble and Defendant Employees did issue Plaintiff a trespass notice, attached hereto as **Exhibit H.** This notice clearly states it is "[t]o be issued only when an arrest is made." **Exhibit H.** Mr. Baker was not arrested; rather, he was unlawfully detained and issued a facially improper Trespass Notice.

62.     Plaintiff thereafter again requested the basis for his removal and detention. Employees ##6-7 still refused to provide any reason and instead told Plaintiff that, pursuant to the improperly issued Trespass Notice, he would be arrested if he ever entered any Barnes & Noble store location again.

63.     Plaintiff remained handcuffed and confined against his will during the duration of this interaction.

64.     At approximately 6:00pm, one of Employees ##6-7 expressed his opinion that Plaintiff should be released upon issuance of the trespass warrant. Officers ##1-2 refused to honor the request to release Plaintiff and instead directed that Defendants continue to detain Plaintiff and proceed to forcibly transport him to the hospital.

65.     Defendants' actions of continuing Plaintiff's confinement and transporting him to the hospital was further done without justification or consent. Plaintiff again requested to know why they were forcing him to go to the hospital. Defendants continued to refuse to answer Plaintiff's questions or give any basis for their actions. Instead, Officers ##1-2 continued Plaintiff's confinement until an ambulance arrived and then forced Mr. Baker to be taken by ambulance to Beth Israel Hospital Emergency Room (hereinafter "Beth Israel"), causing Mr. Baker further injury and emotional harm.

66.     Plaintiff remained handcuffed through the duration of this time, during the ambulance ride, and while waiting in the triage area of the emergency room, despite Plaintiff's protest and despite being expressly told that he was not under arrest, and despite never receiving any purported justification or basis for Defendants' actions.

67.     Plaintiff was released from triage at approximately 6:45pm. Only then were Plaintiff's handcuffs removed. Following triage, Plaintiff was sent to the lower level of the hospital

to wait to be seen by an emergency room psychiatrist. Upon information and belief, Plaintiff was evaluated by a Beth Israel psychiatrist at approximately 7:20pm.

68.      Plaintiff's evaluation by the Beth Israel psychiatrist lasted less than ten (10) minutes and confirmed that Plaintiff did not need any psychiatric attention. See medical records attached hereto as **Exhibit I**.

69.      Upon information and belief, Plaintiff was finally able to leave Beth Israel at approximately 8:00pm.

70.      Following Mr. Baker's unlawful detention and forcible transport to Beth Israel, Plaintiff was sent a bill for the hospital visit and a bill from the FDNY for the ambulance service, despite the fact that Plaintiff was forced to go to the hospital against his will and without cause and/or justification. See medical bills attached hereto as **Exhibit J**.

71.      Upon information and belief, the Officers ##1-2 who detained Mr. Baker, ejected him from Barnes & Noble, and forced Mr. Baker's transport to Beth Israel against Mr. Baker's will, were working at Barnes & Noble through the NYPD's Paid Detail Program.

72.      The Paid Detail Program enables private companies throughout New York City to hire uniformed police officers to work as security personnel at their place of business.

73.      Upon information and belief, Barnes & Noble participates in the Paid Detail program. As such, upon information and belief, Barnes & Noble is in privity of contract with the NYPD and subject to the terms and conditions of that contract.

74.      Upon information and belief, the use of uniformed NYPD officers as private security is a common practice for businesses, entertainment venues, and even private individuals throughout New York. The Paid Detail Unit routinely advertises their program to businesses throughout the city. The NYPD lists "typical assignments" as being at retail chains, department

stores, supermarkets, houses of worship, sports complexes, banks, and office buildings. See, NYPD Paid Details information sheet, attached hereto as **Exhibit K**.

75.　　　Pursuant to the NYPD's description of the Paid Detail Program, participating officers are "active, armed, full-duty New York City Police Officer[s] and ha[ve] been trained by the NYPD." Accordingly, officers are fully uniformed and carry their department-issued handcuffs and firearms while acting as a Paid Detail officer. **Exhibit K**.

76.　　　The NYPD maintains control and responsibility over the officers who participate in this program. Officers assigned to Paid Detail jobs are "subject to at all times NYPD rules, regulations and standards of conduct." **Exhibit H**.

77.　　　Despite the NYPD's admitted control over and regulation of the conduct of Paid Detail officers, the NYPD Patrol Guide does not establish any standards for officers acting on Paid Detail assignments. Indeed, the Patrol Guide expressly exempts Paid Detail officers from its section governing the conduct of officers during off-duty employment.

78.　　　The NYPD shares its duties of control and supervision of officers on Paid Detail assignment with the relevant private business they are on assignment with. Thus, when working on a Paid Detail assignment, officers are both acting under color of law and as agents of the businesses that hire them.

## AS FOR THE FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS FOR VIOLATIONS OF
## THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42
## U.S.C. § 1983

79.　　　Plaintiff repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

80.　　　Defendants subjected Plaintiff to deprivation of liberty without probable cause.

81.     On or about June 22, 2016, Plaintiff was lawfully at Barnes & Noble as a patron, when he was unlawfully and without cause forcibly detained in Barnes & Noble by Defendant Officers at the behest of Defendant Barnes & Noble and Defendant Employees while working under the joint control of Defendant City of New York and Defendant Barnes & Noble.

82.     Plaintiff asserts that he did not resist in any manner nor did Defendants have probable cause or any justification for detaining Plaintiff.

83.     Defendants then held Plaintiff against his will, and forcibly transported him against his will and without justification to Beth Israel Medical Center, where he suffered further detention and deprivation of liberty.

84.     Defendants have deprived Plaintiff of his civil, Constitutional and statutory rights in violation of 42 U.S.C. § 1983 and the United States Constitution.

85.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

### AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATIONS OF THE NEW YORK STATE CONSTITUTION ARTICLE I § 12

86.     Plaintiff repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

87.     Defendants subjected Plaintiff to deprivation of liberty without probable cause.

88.     On or about June 22, 2016, Plaintiff was lawfully at Barnes & Noble as a patron when he was unlawfully and without cause forcibly detained in Barnes & Noble by Defendant Officers at the behest of Barnes & Noble and Defendant Employees while working under the joint

control of Defendants City of New York, NYPD and Barnes & Noble.

89.     Plaintiff asserts that he did not resist in any manner nor did Defendants have probable cause or any justification for detaining Plaintiff.

90.     Defendants then held Plaintiff against his will and forcibly transported him against his will and without justification to Beth Israel where he suffered further detention and deprivation of liberty.

91.     Defendants have deprived Plaintiff of his civil, Constitutional and statutory rights in violation of 42 U.S.C. § 1983 and the New York State Constitution.

92.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE THIRD CAUSE OF ACTION
## AGAINST DEFENDANTS FOR VIOLATIONS OF
## PLAINTIFF'S RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

93.     Plaintiff repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

94.     The acts of Defendant Officers acting under the joint direction and control of Defendants City of New York, Barnes & Noble, and Defendant Employees, were done under color of law, and were motivated by Plaintiff's sexual orientation and disability.

95.     These acts were done without lawful justification, and were designed to and did cause specific and serious harm, pain and suffering to Plaintiff in violation of his Constitutional right to equal protection as guaranteed by the United States Constitution.

96.     As a direct result of the actions and inactions of Defendants, Plaintiff has

suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE FOURTH CAUSE OF ACTION
## AGAINST DEFENDANTS FOR VIOLATIONS OF
## THE NEW YORK STATE CONSTITUTION ARTICLE I § 11

97.     Plaintiff repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

98.     The acts of Defendant Officers acting under the joint direction and control of Defendants City of New York, NYPD, Barnes & Noble, and Defendant Employees, were done under color of law, and were motivated by Plaintiff's sexual orientation and disability.

99.     These acts were done without lawful justification, and were designed to and did cause specific and serious harm, pain and suffering to Plaintiff in violation of his Constitutional right to equal protection as guaranteed by Article I, Section 11 of the Constitution of the State of New York.

100.    As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE FIFTH CAUSE OF ACTION
## FALSE IMPRISONMENT

101.    Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

102.    Plaintiff at all times during his detention by Defendant Officers and Defendant

Employees working at Defendants' direction and under Defendants' supervision and control was aware of his confinement.

103.     Plaintiff at all times during his detention did not consent to his confinement.

104.     Defendants' confinement of Plaintiff was not privileged, as Defendants' had no justification for their actions of detaining, holding, and transporting Plaintiff against his will.

105.     As a direct result of Defendants' acts, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE SIXTH CAUSE OF ACTION
## AGGREVATED WRONGFUL DETENTION

106.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

107.     Plaintiff was detained by Defendants against his will.

108.     This detention was without justification and unlawful.

109.     As a direct result of Defendants' acts, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE SEVENTH CAUSE OF ACTION
## BATTERY

110.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

111.     Defendants wrongfully and forcibly detained Plaintiff without justification and

without consent.

112.     As a direct result of Defendants' acts, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE EIGHTH CAUSE OF ACTION
### ASSAULT

113.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

114.     Defendants through their conduct intentionally and without justification placed Plaintiff in fear of harmful contact.

115.     As a direct result of Defendants' acts, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE NINTH CAUSE OF ACTION
## AGAINST DEFENDANTS FOR VIOLATIONS OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

116.     Plaintiff repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

117.     Defendant Barnes & Noble operates a place of public accommodation subject to Title VII's non-discrimination mandate.

118.     Plaintiff is an openly gay man living with HIV, and is protected from discrimination in places of public accommodation on the basis of his sexual orientation and disability.

119.     Defendants' conduct described herein constitutes discrimination in a place of public accommodation against Plaintiff based on his sexual orientation and disability.

120.     The actions and inactions of Defendants in depriving Plaintiff of her constitutional and statutorily protected rights was willful and malicious. As a result of Defendants' acts, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering.

### AS FOR THE TENTH CAUSE OF ACTION
### NEW YORK STATE HUMAN RIGHTS LAW

121.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

122.     The acts and practices of Defendants, as set forth above, constitute discrimination against Plaintiff based on his sexual orientation and disability, in violation of New York State Human Rights Law.

123.     Plaintiff is a member of two protected classes as defined by New York Executive Law § 296.

124.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to monetary damages, pain and suffering, the full extent of which is not yet known.

### AS FOR THE ELEVENTH CAUSE OF ACTION
### NEW YORK CITY HUMAN RIGHTS LAW

125.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

126.     Defendants, through their actions and inactions, discriminated against Plaintiff in a place of public accommodation because of his sexual orientation and disability in violation of the Administrative Code of the City of New York.

127.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including but not limited to monetary damages, pain and suffering.

## AS FOR THE TWELTH CAUSE OF ACTION
## FOR VIOLATIONS OF THE AMERICAN WITH DISABILITIES ACT

128.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

129.     Title III of the ADA prohibits covered entities from discriminating against individuals on the basis of a disability in places of public accommodation.

130.     Plaintiff is an openly gay man living with HIV. HIV/AIDS is a disability covered under the ADA.

131.     Defendant Barnes & Noble operates a place of public accommodation, and violated the ADA when Defendants unlawfully discriminated against Plaintiff based on his disability and subjected him to unlawful seizure and detention.

132.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including but not limited to monetary damages, mental anguish, and pain and suffering, the full extent of which are not yet known.

## AS FOR THE THIRTEENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

133.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

134.     Defendants owed Plaintiff a duty not to discriminate against Plaintiff on the basis of his membership in protected categories, and not to violate his right to remain free from unlawful seizure and detention.

135.     Defendants breached this duty by their conduct described herein.

136.     Defendants breach directed caused Plaintiff's injuries complained of herein.

137.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including but not limited to monetary damages, mental anguish, pain and suffering, the full extent of which are not yet known.

## AS FOR THE FOURTEENTH CAUSE OF ACTION
## NEGLIGENCE

138.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

139.     Defendants owed Plaintiff the duties of not discriminating against Plaintiff, and not violating Plaintiff's right to be free from unlawful seizure.

140.     Defendants breached those duties to Plaintiff through their conduct described herein.

141.     As a direct result of the actions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including monetary damages, mental anguish, pain and suffering, the full extent of which are not yet known.

## AS FOR THE FIFTEENTH CAUSE OF ACTION
## NEGLIGENCE PER SE

142.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

143.     Plaintiff is a member of the class of individuals that was intended to be protected by Title VII, ADA, New York State Human Rights Law and New York City Human Rights Law.

144.     Defendants actions and inactions were the proximate cause of injuries sustained by Plaintiff from the discriminatory treatment and unlawful detention he suffered.

## AS FOR THE SIXTEENTH CAUSE OF ACTION
## NEGLIGENT PERFORMANCE OF
## GOVERNMENTAL FUNCTION

145.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

146.     Defendants were at all relevant times operating a place of public accommodation while employing Defendant Officers acting under the joint control of Defendant City of New York and Defendant Barnes & Noble. In their capacity as state actors and operators of a place of public accommodation, Defendants assumed the affirmative duty to be bound by State and City non-discrimination laws.

147.     Plaintiff is in the class of persons intended to be protected by these laws.

148.     Defendants violated these affirmative statutory duties through failing to abide by their own non-discrimination policies and by failing to enforce these policies and statutory protections as to a member of protected classes.

149.     As a direct result of Defendants' policy violations and discriminatory practice in contravention of their statutory duties, Plaintiff suffered injuries and harms, the full extent of which are not yet known.

### AS FOR THE SEVENTEENTH CAUSE OF ACTION
### COMMON LAW RESPONDEAT SUPERIOR

150.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

151.     The unlawful conduct of Defendant Officers occurred while they were on duty and in uniform, and in the course and scope of their duties and functions as New York City Police Officers while they were acting as agents and employees of Defendant City of New York, Defendant NYPD, and Defendant Barnes & Noble. Defendants City of New York, NYPD, and Barnes & Noble are therefore liable to Plaintiff under the common law doctrine of *respondeat superior*.

152.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

### DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grants the following relief:

A. Find that Defendants' conduct described herein violated Plaintiffs' rights under federal, state, and local law, including but not limited to rights secured under the United States Constitution, New York State Constitution, Title VII of the Civil Rights Act of 1964,

Americans With Disabilities Act of 1990, New York State Human Rights Law, and New York City Human Rights Law;

B. Enter a permanent injunction enjoining Defendants from further violating these laws, including but not limited to Title VII, Americans With Disabilities Act, New York State Human Rights Law, and New York City Human Rights Law;

C. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of their unlawful practices are eliminated, including but not limited to declaring the Trespass Notice null and void;

D. Award Plaintiff all damages to which Plaintiffs are entitled, including but not limited to medical expenses, with prejudgment interest;

E. Award Plaintiff compensatory damages due to Defendants' acts that caused Plaintiff pain and suffering;

F. Award punitive damages due to Defendants' willful and/or reckless disregard for Plaintiff's statutorily protected rights;

G. Award interest as allowed by law;

H. Award Plaintiff reasonable attorneys' fees, expenses and costs of this proceeding;

I. Such other and further relief as this Court deems just and proper.

Date:   August 2, 2017
        New York, NY

_____
Erica T. Kagan (EK-0425)
THE KURLAND GROUP
*Attorneys for Plaintiff*
160 Broadway, East Building, 11th Floor
New York, New York 10038
(212) 253-6911 (t)
(212) 614-2532 (f)
kagan@kurlandgroup.com